United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLA COVILLO, *et al.*, | No. C-11-00594 DMR |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STRIKE** |
| v. | |
| SPECIALTYS CAFE, *et al.*, | |
| Defendants. | |

Defendants Specialty's Cafe and Bakery, Inc. and Craig Saxton move the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm's seventh claim for relief and class and collective claims. In the alternative, Defendants move to strike portions of Plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(f). This matter is suitable for determination without oral argument pursuant to Civil L.R. 7-1(b). For the reasons below, the court DENIES Defendants' motion to dismiss and motion to strike.

## I. BACKGROUND

Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm ("Plaintiffs") filed their first amended complaint against their former employers, Defendants Specialty's Cafe and Bakery, Inc. ("Specialty's) and Craig Saxton (collectively, "Defendants"). [Docket No. 27-1.] The complaint

seeks class action and collective action relief, and alleges numerous wage and hour violations under both federal and state law.

Specifically, Plaintiffs' first amended complaint alleges the following claims: 1) failure to pay minimum wage and overtime in violation of California Labor Code sections 510 and 1194; 2) failure to pay wages due upon termination in violation of California Labor Code section 203; 3) failure to provide accurate pay stubs in violation of California Labor Code section 226; 4) failure to maintain accurate payroll time records in violation of California Labor Code section 1174; 5) failure to provide adequate rest periods in violation of California Labor Code section 226.7; 6) failure to provide adequate meal periods in violation of California Labor Code sections 226.7 and 512; 7) improper deductions from wages in violation of California Labor Code section 221; 8) conversion; 9) failure to reimburse business expenses in violation of California Labor Code sections 2802 and 2804; 10) failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.; and 11) illegal business practices in violation of California Business & Professions Code section 17200 *et seq*.

Plaintiffs bring their California claims as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a class of "all natural persons who were employed by Specialty's in California as non-exempt workers during the period beginning four years prior to the filing" of the first amended complaint. (Am. Compl. ¶ 56.) Plaintiffs bring their FLSA claim as an opt-in collective action, and seek to represent "all individuals who, at any time during the three years preceding the filing of this Complaint, were or have been employed as non-exempt workers by Specialty's in the United States." (Am. Compl. ¶ 71.)

Defendants move to dismiss Plaintiffs' seventh claim for relief for improper deductions, and all of Plaintiffs' class and collective claims for failure to state a claim upon which relief may be granted. In the alternative, Defendants move to strike Plaintiffs' class and collective claims for failure to satisfy Rule 23 requirements for a class action.

## II. DISCUSSION

**A.    Legal Standard**

    **1.    Motion to Dismiss**

2

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failing to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In ruling on the motion, the court may not consider material outside the complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). However, material properly submitted with the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990).

    **2.**     **Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is

"immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial, and such a motion may be appropriate where it will streamline the ultimate resolution of the action. *See Fantasy*, 984 F.2d at 1527-28. "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1162 (C.D. Cal.2010) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal.2002)). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

**B.     Analysis**

**1.     Plaintiffs' Seventh Claim for Relief**

Defendants seek to dismiss Plaintiffs' seventh claim for relief, which alleges that Defendant Specialty's made unlawful deductions from putative class members' wages in violation of California Labor Code section 221. Specifically, the first amended complaint makes the following allegations. In addition to being paid an hourly wage, Plaintiff Chisholm, who was employed as a delivery driver, received "a piece-rate payment that Defendant categorized as a 'delivery fee bonus.'" (Am. Compl. ¶¶ 10-11.) Specialty's charges its customers delivery fees which range between $10 and $20, depending on the size of the order. During an average week, Chisholm accumulated between $1,100 and $1,300 in delivery fees. Specialty's then "removed 25% of the gross delivery fees and put them in the store's tip pool." (Am. Compl. ¶ 11.) The balance, which was the remaining 75% of the gross delivery fees, was potentially available to be paid to Chisholm, but the amount he was entitled to receive depended "upon how many 'defects' were reported by customers or management over the applicable period" for the driver's store, or the store's "pay period defect" rate. (Am. Compl. ¶¶ 11, 12.)

4

If Specialty's receives what it "interprets as a customer complaint" about an order, "whether or not it was the responsibility" of the delivery driver, it "assigns a 'defect'" to the order. (Am. Compl. ¶ 11.) Each store's weekly defect rate is determined by dividing the total number of the store's defects by the total number of online and kiosk orders. (Am. Compl. ¶ 12.) "Thereafter, Specialty's management averages two successive weekly defect rates to determine the pay period defect rate upon which Chisholm's, and other Drivers', delivery fee bonus will be based." (Am. Compl. ¶ 12.)

Plaintiffs attached an exhibit entitled "2011 Vehicle Driver Delivery Fees Program" to their first amended complaint. (Am. Compl. ¶ 12, Ex. 1.) According to that document, "[t]he Vehicle Deliver [sic] Driver store must have a Pay Period defect of .30% or lower for the Driver to qualify for any Delivery Fee Payout." (Am. Compl. Ex. 1.) The document sets forth pay period defect rates and the corresponding "Potential Delivery Fee Payout Breakdown." (Am. Compl. Ex. 1.) For example, if a pay period defect is .15% or lower, the potential payout is 100%. If the defect rate is between .26% and .30%, the potential payout is 70%. (Am. Compl. Ex. 1.) If a driver is not paid 100% of the delivery fee payout, the balance is retained by Specialty's. (Am. Compl. ¶ 12.)

California Labor Code section 221 provides that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Plaintiffs allege that "[b]y reducing a driver's delivery fee payout based on a store's defect rate," Specialty's violates section 221 by "improperly and illegally taking deductions from a driver's wages." (Am. Compl. ¶ 14.)

In the present motion, Defendants characterize the driver delivery fees program as a "bonus program," and argue that the program does not amount to a deduction from wages, but instead is "the means by which Specialty's calculates the bonus it shares with its employees to encourage and reward their participation in the success of their store." (Defs.' Mot. 3.) Defendants analogize Specialty's driver delivery fees program to the bonus program upheld by the California Supreme Court in *Prachasaisoradej v. Ralphs Grocery Company, Inc.*, 42 Cal.4th 217 (2007) to argue that the claim fails as a matter of law and should be dismissed.

In *Ralphs*, the court examined whether an employee bonus plan based on a profit figure which was determined by subtracting certain store expenses from store revenues violated statutory provisions prohibiting certain deductions from wages, including California Labor Code section 221. The court held that the bonus plan at issue "did not create an expectation of or entitlement to a specified wage, then take deductions or contributions from that wage to reimburse Ralphs for its business costs." *Id*. at 223. Instead, "ordinary business expenses . . . were figured in . . . to determine the store's profit, upon which the supplementary incentive compensation payments were calculated." *Id*. at 224. In other words, the employer was not retaining something at an individual employee's expense, but rather was providing a profit-based bonus "to reward employees beyond their normal pay for their collective contribution to store profits." *Id*. at 244.

In concluding that the profit-based bonus in *Ralphs* did not violate state law, the court reviewed and distinguished past decisions in which deductions from employees' compensation were found illegal. The court found that in those cases,

> the employee's compensation, whether regular or supplementary, was set, in essence, as a sales commission, i.e., a specified and promised share of the revenues attributable to that employee's personal sales or managerial efforts. The set commission was then directly reduced by the full dollar value of merchandise and cash losses, as determined by the employer, and regardless of employee fault. The employer thus defrayed its merchandise and cash losses by charging them, dollar for dollar, against its liability for wages . . . By this means, the employer reduced individual employees' wages to increase its own retained profits.

*Id*. at 236; *see also Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal.2d 319 (1962); *Quillian v. Lion Oil Co.*, 96 Cal. App. 3d 156 (1979); *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109 (1995). The court concluded that the practice of reducing individual wages to increase employer profits is "the practice the statutes, regulations, and cases have prohibited." *Ralphs*, 42 Cal.4th at 236.

Here, Defendants argue that the driver delivery fees program is similar to the bonus program upheld in *Ralphs*, and describe the manner by which the "bonus" is calculated as follows:

> (1) calculate delivery fees generated by an entire store during a pay period (Ex. 1 to FAC); (2) calculate the defect rate for all deliveries storewide over a pay period (Ex. 1 to FAC); (3) calculate storewide bonuses based on total delivery fees and the defect rate (Ex. 1 to FAC); (4) distribute 75 percent to delivery drivers and 25 percent to other hourly employees. (Ex. 1 to FAC.)

6

(Defs.' Mot. 3.) Defendants argue that there is no guarantee any employee will receive any portion of the delivery fees; instead, employees "*may* be entitled to a bonus based on the store's total delivery fees and the defect rate if conditions set forth in the Bonus Program are satisfied." (Defs.' Mot. 4; emphasis in original.) While acknowledging that there is an adjustment made in the process of calculating the bonus, Defendants assert that the adjustment is not made from the employee's bonus or wage but is instead made from the delivery fees collected by Specialty's. (Defs.' Mot. 3.) Accordingly, Defendants argue, the driver delivery fees program does not result in an unlawful deduction of wages.

Essentially, the parties dispute whether the driver delivery fees program is, as Defendants argue, a profit-based bonus like the bonus program upheld in *Ralphs*, or as Plaintiffs argue, a program that reduces employees' wages to increase the employer's profits, similar to those held unlawful in *Kerr's*, *Quillian*, and *Hudgins*. To support their position, Defendants have described a four-step process by which they claim the driver delivery fees payment is calculated. However, there is no support for these steps in either the first amended complaint or in Exhibit 1. In ruling on a Rule 12(b)(6) motion to dismiss, the court may only consider the complaint and exhibits attached thereto. *See Arpin*, 261 F.3d at 925; *Hal Roach Studios, Inc.*, 896 F.2d at 1555. For example, Defendants claim that the bonus is determined by first calculating "delivery fees generated by an entire store during a pay period" (Defs.' Mot. 3), but nowhere in Exhibit 1 does it state this. Moreover, this assertion is contradicted by the allegations in the first amended complaint that the driver delivery fees program compensates drivers based only on the actual delivery fees each individual driver generates. (Am. Compl. ¶ 11.) Defendants also assert that they "calculate the defect rate for *all deliveries storewide* over a pay period." (Defs.' Mot. 3; emphasis added.) Again, there is no support for this assertion in the record. To the contrary, Exhibit 1 states that in order for a driver to qualify for a delivery fee payment, the driver's "*store* must have a Pay Period defect of .30% or lower"; it does not state the defect rate is calculated for all *deliveries* storewide. (Am. Compl. Ex. 1; emphasis added.) Further, the first amended complaint alleges that the store's weekly

1  defect rate is calculated by dividing the total number of each store's defects by the total number of
2  online and kiosk orders. (Am. Compl. ¶ 12.)
3        The parties clearly dispute the mechanics of the driver delivery fees program. Accordingly,
4  a determination of whether the program is akin to a permissible profit-based bonus program or
5  amounts to an unlawful reduction in wages requires resolution of factual issues, which is not
6  appropriate on a Rule 12(b)(6) motion to dismiss. At this stage of the litigation, accepting all
7  material allegations as true and construing them in the light most favorable to Plaintiffs as the non-
8  moving party, the court cannot conclude that the driver delivery fees program is *not* akin to one of
9  the plans held unlawful in *Kerr's*, *Quillian* and *Hudgins*. Accordingly, Defendants' motion to
10  dismiss Plaintiffs' seventh claim for relief is DENIED.

### 2. General Class Allegations

12  Defendants next argue that Plaintiffs' class allegations should be either dismissed or stricken
13  because Plaintiffs "fail to plead anything more than legal conclusions couched as purported factual
14  allegations to support their class and collective claims." (Defs.' Mot. 5.) In the alternative,
15  Defendants argue that the class allegations should be stricken because they fail to satisfy Rule 23
16  requirements for a class action. Specifically, Defendants argue that Plaintiffs' statewide and
17  nationwide class action allegations fail to plead facts demonstrating ascertainable statewide and
18  nationwide classes, and that Plaintiffs cannot establish that common issues of law or fact
19  predominate or demonstrate that their claims are typical of the putative classes, nor can they
20  establish that they adequately represent the putative classes. (Defs.' Mot. 9-14.)
21  Defendants cite numerous cases to support their arguments about Rule 23 requirements for
22  class actions. However, all of the cases cited considered such requirements in the context of
23  motions for class certification. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011);
24  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999); *Whiteway v. FedEx Kinko's Office &*
25  *Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) (overturned on other
26  grounds); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008). While Defendants
27  correctly assert that class allegations may be stricken at the pleading stage, *see Kamm v. California*
28  *City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975), motions to strike class allegations "'are disfavored

because a motion for class certification is a more appropriate vehicle' for arguments about class propriety." *Hibbs-Rines v. Seagate Tech., LLC.*, No. 08-5430, 2009 WL 513496, at *3 (N.D. Cal. March 2, 2009) (quoting *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)); *see also In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614-15 (N.D. Cal. 2007) (denying defendants' motion to dismiss or strike class allegations as premature where there had been no answer, discovery had not yet commenced, and no motion for class certification had been filed). Such a motion should be filed "[a]t an early practicable time" after a person sues. *See* Fed. R. Civ. P. 23(c)(1).

Here, Defendants have not yet answered Plaintiffs' first amended complaint, discovery has not yet commenced, and no motion for class certification has been filed. *See Hibbs-Rines*, 2009 WL 513496, at *3 (denying motion to strike class allegations as premature; "[p]laintiff should at least be permitted to conduct some discovery before the Court rules on the propriety of the class allegations."); *see also General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (internal quotation omitted). Discovery is integral to developing the "shape and form of a class action," *In re Wal-Mart*, 505 F. Supp. 2d at 615 (internal quotation omitted), and the court will determine the propriety of the class allegations during the class certification process. Accordingly, the court finds that the motions to dismiss or strike the class allegations are premature and are thus DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' seventh cause of action is DENIED, and Defendants' motions to dismiss or strike Plaintiffs' class allegations are DENIED.

IT IS SO ORDERED.

Dated: December 22, 2011



DONNA M. RYU
United States Magistrate Judge

9