UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLA COVILLO, *et al.*, | No. C-11-00594 DMR |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| v. | |
| SPECIALTY'S CAFE, *et al.*, | |
| Defendants. | |

Before the court is Specialty's Cafe and Bakery, Inc.'s and Craig Saxton's ("Defendants") motion to compel arbitration. The court held a hearing on August 9, 2012, at which the parties were represented by counsel. For the reasons stated at the hearing and set forth below, the court DENIES Defendants' motion.

## I. BACKGROUND

Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm ("Plaintiffs") filed this action on February 9, 2011. In their second amended complaint, Plaintiffs allege numerous wage and hour violations under both federal and state law, and seek class action and collective action relief. On June 19, 2012, Defendants filed the instant motion seeking an order compelling Plaintiffs to submit their claims to binding arbitration, alleging the existence of an agreement by the parties to arbitrate any employment disputes.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce, including employment agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., — U.S.—, 130 S.Ct. 1758, 1773 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id*., 130 S.Ct. at 1773-74 (quoting *Volt*, 489 U.S. at 479). In accordance with the consensual nature of private dispute resolution, parties may agree to limit the issues subject to arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, Inc., 473 U.S. 614, 628 (1985); to arbitrate according to specific rules, *Volt*, 489 U.S. at 479; and to limit with whom a party will arbitrate its disputes, *Stolt-Nielsen*, 130 S.Ct. at 1774. Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt-Nielsen*, 130 S.Ct at 1773 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a matter of contract, and the FAA places arbitration agreements "upon the same footing as other contracts." *Volt*, 489 U.S. at 478 (citations and internal quotation marks omitted). The interpretation of an arbitration agreement is therefore generally a matter of state law, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009), unless application of state-law rules would "stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, — U.S.— , 131 S.Ct. 1740, 1748 (2011).

### III. ANALYSIS

Defendants move to compel arbitration on the grounds that the parties entered into written agreements to arbitrate all employment disputes, and that the arbitration agreements are enforceable

1  and not unconscionable. Defendants further contend that Plaintiffs' employment disputes must be
2  submitted to binding arbitration as individual matters, rather than as a class action, because the
3  parties did not agree to arbitrate class claims. Plaintiffs argue, *inter alia*, that there was no express
4  agreement between the parties to submit employment disputes to binding arbitration, and that
5  therefore, Defendants' motion must be denied. On that issue, the court agrees.[1]

6  Defendants must demonstrate that a valid arbitration agreement exists under general
7  principles of contract law. Under California law, "an essential component to a contract is the
8  consent of the parties to the contract." *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1170
9  (2007) (citing Cal. Civil Code § 1550(2)). "'The consent of the parties to a contract must be . . .
10 communicated by each to the other.'" *Id*. (quoting Cal. Civil Code § 1565(3)). California law
11 recognizes that the right to a judicial forum is a substantial right, and that "for an arbitration
12 provision to be incorporated into a contract by reference, the reference must be clear and
13 unequivocal, and the terms of the incorporated document must be known or easily available to the
14 parties." *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 645 (1986).

15 Defendants contend that Plaintiffs each entered into an enforceable agreement to submit
16 employment disputes to binding arbitration when they signed an acknowledgment of receipt of the
17 employee handbook, which expressly references arbitration. Defendants also argue that the
18 Arbitration/Mediation Dispute Resolution Agreement embodies a contract for binding arbitration.
19 The court now turns to each of these documents.

20 The "Hourly Employee Employment Handbook" dated April 2005 provides for resolution of
21 employment disputes as follows:

> Under certain circumstances, you may feel that a concern and/or complaint that you have notified your supervisor and/or Human Resources about has not been handled appropriately. If it cannot be resolved through normal in-house procedures, **the company reserves the right to have the claim handled through an arbitration/mediation dispute resolution agency as determined by the American Arbitration Association**.

---

[1] Plaintiffs also argue that even if there were an agreement between the parties to arbitrate employment disputes, the agreement is procedurally and substantively unconscionable and therefore unenforceable. (Pls.' Opp'n 13-18.) Further, Plaintiffs argue that Defendants waived their right to arbitrate by exploiting the litigation process for over a year. (Pls.' Opp'n 20.) As the court concludes that there was no agreement to arbitrate, the court does not reach these arguments.

> **You are required to sign, acknowledge and agree to the terms of the Abitration[sic]/Mediation Dispute Resolution Agreement in order to be eligible for employment with the company**. . . .

(Havas Decl., Ex. B (Hourly Employee Employment Handbook, rev. April 1, 2005) at 22 (emphasis added).)

Plaintiff Covillo signed an "Employee Acknowledgment of Receipt of [the 2005] Handbook," dated August 9, 2006, which refers generally to the guidelines and information contained in the handbook but does not refer specifically to the arbitration provision:

> This is to acknowledge that I have received a copy of the company's employee handbook to review. I understand that it provides guidelines and summary information about the company's personnel policies, procedures, benefits, and rules of conduct. I also understand that it is my responsibility to read, understand, become familiar with, and comply with the standards that have been established. I further understand that the company reserves the right to modify, supplement, rescind, or revise any provision, benefit, or policy from time to time, with or without notice, as is deemed necessary or appropriate.
>
> I further understand that I am not to take this Handbook out of the store or administrative office at any time, however, a copy of it is available at all times from my inspection and review. . . .
>
> I also acknowledge that both the company and I have the right to terminate the employment relationship at any time, with or without cause or advance notice, and that this employment at will relationship will remain in effect throughout my employment with the company unless it is specifically modified by an express written agreement signed by me and the President of the company.
>
> I further acknowledge that this employment at will relationship may not be modified by any oral or implied agreement.

(Havas Decl., Ex. C.) The employment handbook underwent revision and became the "Team Member Handbook," dated March 2008. This version contains a dispute resolution and arbitration provision which states as follows:

> **Problems, disputes, or claims not resolved through the preceding [internal] problem resolution steps are subject to final and binding arbitration.** The arbitration proceeding will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association. **The decision or award of the Arbitrator made under these rules is exclusive, final, and binding on both parties.**

4

(Havas Decl., Ex. B ("Specialty's Café & Bakery Team Member Handbook," revised March 2008) at 28 (emphasis added).)

The "Team Member Acknowledgement Form" to the 2008 version of the handbook signed by Plaintiff Chisholm, dated January 24, 2011, contains a reference to Specialty's' alternative dispute resolution process, but does not specifically mention an arbitration provision:

> The team member handbook describes important information about Specialty's Café & Bakery, and I understand that I should consult the Human Resources Department regarding any questions not answered in the handbook.
> . . .
> Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except to Specialty's policy of employment-at-will. All such changes will be communicated through official notices, and I understand that revised information may supersede, modify, or eliminate existing policies. . . .
>
> I understand that as a condition of employment, **any disputes will be resolved through Specialty's alternative dispute resolution process**. . . .

(Havas Decl., Ex. C (emphasis added).)

Defendants also offer evidence of a written agreement, entitled "Arbitration/Mediation Dispute Resolution Agreement," which states the following:

> This is to acknowledge that Saxton Enterprises, Inc. d.b.a. Specialty's Café & Bakery, has notified me that **it is their intent to have any unresolved employment disputes heard by an arbitration/mediation dispute resolution agency as defined by the American Arbitration Association. Further, I agree to abide by this clause as one of the terms of employment**.
>
> I further understand and agree that I am to go through the appropriate channels and steps with an employment dispute in-house prior to requesting an arbitrator/mediator.
>
> I further acknowledge that this arbitration/mediation agreement may not be modified by any oral or implied agreement.

(Havas Decl., Ex. A (emphasis added).) Plaintiffs Covillo and Chisholm do not recall signing the handbook acknowledgment forms or the Arbitration/Mediation Dispute Resolution Agreement. (*See* Covillo Decl. ¶5; Chisholm Decl. ¶4.) Defendants, however, offer evidence that Covillo and Chisholm signed acknowledgment forms and agreements on August 9, 2006, and January 24, 2011, respectively. (Havas Decl., Exs. A and C.)

1    Defendants concede that they do not have a similar written agreement signed by Plaintiff
2    Troyreac Henry, but argue that Henry must have signed the forms because it is Specialty's' practice
3    to require employees to sign the forms as a condition of employment. (Havas Decl. ¶6.) However,
4    Defendants also concede that Specialty's has signed agreements from only 90 percent of their
5    employees. (Havas Decl. ¶6.) Therefore, with respect to Plaintiff Henry, Defendants have failed to
6    demonstrate that a valid arbitration agreement exists. *See Mitri*, 157 Cal. App. 4th at 1169 (party
7    seeking to compel arbitration "'bears the burden of proving [the existence of an agreement to
8    arbitrate] by a preponderance of the evidence.'") (quoting *Rosenthal v. Great Western Fin.*
9    *Securities Corp.*, 14 Cal.4th 394, 413 (1996)).

10   With respect to Covillo and Chisholm, Defendants contend that Plaintiffs entered binding
11   arbitration agreements based on the documents that they signed. The court determines, however,
12   that neither the handbook acknowledgment forms nor the Arbitration/Mediation Dispute Resolution
13   Agreements establish the existence of an agreement to arbitrate under California law.

14   **A.    Employee Handbook and Acknowledgment Forms**

15   Turning first to the employee handbooks that were in effect at the time of Covillo and
16   Chisholm's employment, neither acknowledgment form signed by Plaintiffs refers to an agreement
17   by the employee to abide by the handbook's arbitration provision, as required under California law.
18   *Mitri*, 157 Cal. App. 4th 1173. In *Mitri*, the plaintiffs received and signed a general employee
19   handbook which discussed the employers' arbitration policy. The employee handbook contained an
20   arbitration provision: "Any dispute arising out of employment with the Company, as allowed by law,
21   will be settled by binding arbitration." *Id.* at 1167. The handbook further stated that "Employees
22   will be provided a copy of their signed arbitration agreement," although the court noted the absence
23   of a signed arbitration agreement in the record. *Id.* The court further noted that the plaintiffs signed
24   a separate document, entitled "Acknowledgment Receipt Employee Handbook," which referred to
25   the handbook but did not refer "to an *agreement* by the employee to abide by the employee
26   handbook's arbitration provision." *Id.* at 1173 (emphasis in original). The court affirmed the denial
27   of the employer's motion to compel arbitration on the ground that the documents did not constitute
28   an arbitration agreement. *Id.*

Plaintiff Covillo, who was employed by Specialty's from July 2006 to September 2007, is not bound by an agreement to arbitrate based on her signed "Employee Acknowledgment of Receipt of Handbook." The April 2005 employee handbook that was in effect during that time states only that Specialty's "reserves the right to have the claim handled through an arbitration/mediation dispute resolution agency." (Havas Decl., Ex. B at 22.) This language does not evidence any intent to be bound by arbitration. Furthermore, Covillo's signed acknowledgment form refers generally to the handbook but does not refer to "an *agreement* by the employee to abide by the employee handbook's arbitration provision," as required under *Mitri*. 157 Cal. App. 4th at 1173 (emphasis in original); *see also Sparks v. Vista Del Mar Child & Family Servs.*, No. B234988, 2012 WL 3075896, at *5-6 (Cal. App. 2d, July 30, 2012) (employee handbook's arbitration clause not enforceable where signed acknowledgment did not reference agreement to arbitrate).

Plaintiff Chisholm, who was employed from January to July 2011, signed a form acknowledging that he received the March 2008 handbook. The acknowledgment form states that "any disputes will be resolved through Specialty's alternative dispute resolution process," but does not refer specifically to binding arbitration. *See Mitri*, 157 Cal. App. 4th at 1173. To the extent that Defendants contend that the signed acknowledgment form incorporated the terms of the Team Member Handbook to form an agreement to arbitrate, Defendants must show that the alleged agreement "clearly and unequivocally" refers to the incorporated document. *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 643 (1986). Here, the acknowledgment form refers to the employer's "alternative dispute resolution process," but fails to clearly and unequivocally refer to the arbitration provision in the Team Member Handbook, which contains no chapter or section heading for "alternative dispute resolution." Rather, the arbitration provision of the employee handbook, providing that unresolved employment disputes are "subject to final and binding arbitration," is contained in a section entitled "Open Door Policy & Problem Resolution." (Havas Decl., Ex. B at 27.) Moreover, given the company's explicit reservation of the right to revise or amend the "information, policies, and benefits" described in the handbook at any time (Havas Decl., Ex. C), the handbook's terms are unfixed, moving targets, and what constitutes "alternative dispute resolution process" is not clear. *See Chan*, 178 Cal. App. 3d at 645 (the terms of the

1  incorporated document "must be known or easily available to the parties."). The acknowledgment
2  form does not, therefore, sufficiently evidence Chisholm's agreement to abide by the binding
3  arbitration provision of the Team Member Handbook. *Mitri*, 157 Cal. App. 4th at 1173; *see also*
4  *Nelson v. Cyprus Bagdad*, 119 F.3d 756, 761 (9th Cir. 1997) (employee did not enter "knowing
5  agreement" to arbitrate ADA claims by signing acknowledgment form which did not notify
6  employee that employment handbook included arbitration clause).

### B. Arbitration/Mediation Dispute Resolution Agreements

Defendants also contend that Plaintiffs Covillo and Chisholm entered agreements to arbitrate their employment disputes by signing the Arbitration/Mediation Dispute Resolution Agreement. That document notifies the employees of "[Defendants'] *intent* to have any unresolved employment disputes heard by an arbitration/mediation dispute resolution agency as defined by the American Arbitration Association." (Havas Decl., Ex. A (emphasis added).) This contractual language regarding the employer's intent is not sufficiently definite to evidence the employee's agreement to be bound by arbitration. *Mitri*, 157 Cal. App. 4th at 1173. Moreover, the language of this provision evidences Defendants' intent to seek either arbitration *or* mediation. As such, it appears that Defendants are not proposing a binding process, since mediation is rarely binding. *See*, *e.g.,* AAA Employment Arbitration Rules and Mediation Procedures, M-8 ("Duties and Responsibilities of the Mediator") ("The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.") (available at www.adr.org); *see also Cheng-Canindin v. Renaissance Hotel Assocs.*, 50 Cal. App. 4th 676, 684 (1996) (under California law, an agreement to arbitrate must provide for, *inter alia*, a binding decision in order to be valid).

In construing the agreement, the court cannot "create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties." *Mitri*, 157 Cal. App. 4th at 1173 (citing Code Civ. Proc. § 1858 ("In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted")). Although the document further states, "I agree to abide by this

clause as one of the terms of employment," the employee only agrees that Defendants intend to have disputes heard by an arbitrator or mediator. On its face, this agreement does not evidence the parties' intentions to submit to binding arbitration. *See Stolt-Nielsen*, 130 S.Ct. at 1773-74 (the court "must 'give effect to the contractual rights and expectations of the parties'") (quoting *Volt*, 489 U.S. at 479).

Defendants rely on *Cox v. Ocean View Hotel Corp.*, 533 F. 3d 1114 (9th Cir. 2008), to argue that the separate Arbitration/Mediation Dispute Resolution Agreement incorporated the rules and procedures of the AAA into the terms of the arbitration agreement. (Defs' Mot. 5-7, 11.) However, in *Cox*, the court noted that "neither party disputes the validity of the Letter of Agreement" which included the arbitration clause. 533 F.3d at 1120. The court did not construe the parties' agreements to determine whether an arbitration agreement existed, but rather addressed the employee's defenses to enforcement of the arbitration agreement on the grounds of breach and waiver of the agreement to arbitrate. *Id*. Here, by contrast, the court must determine as a threshold matter whether a valid agreement to arbitrate exists and concludes that no such agreement exists between the parties.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is DENIED.

IT IS SO ORDERED.

Dated: August 14, 2012



DONNA M. RYU
United States Magistrate Judge

9