United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLA COVILLO, *et al.*, | No. C 11-00594 DMR |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO STAY** |
| v. | |
| SPECIALTY'S CAFE, *et al.*, | |
| Defendants. | |

Before the court is Defendant Specialty's Cafe and Bakery, Inc.'s motion to stay. The court held a hearing on October 10, 2012, at which the parties were represented by counsel. For the reasons stated at the hearing and set forth below, the court DENIES Defendant's motion.

## I. BACKGROUND

Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm ("Plaintiffs") filed this action on February 9, 2011. In their second amended complaint, filed on February 14, 2012, Plaintiffs allege numerous wage and hour violations under both federal and state law, and seek class action and collective action relief. In June 2012, Defendants Specialty's Cafe and Bakery, Inc. and Craig Saxton filed a motion to compel arbitration. The court denied the motion on August 14, 2012, finding that there was no express agreement between the parties to submit employment disputes to binding arbitration. [Docket No. 82 (Order Denying Defendants' Motion to Compel Arbitration, "Order") 3.] After the court denied the motion, Defendants appealed the order to the United States

Court of Appeals for the Ninth Circuit. Defendant Specialty's Cafe and Bakery, Inc. ("Specialty's Cafe" or "Defendant") now asks the court to stay this litigation pending the Ninth Circuit's decision on appeal.

## II. DISCUSSION

### A. Legal Standard

In *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990), the Ninth Circuit explicitly held that a district court has discretion in deciding whether to stay proceedings pending an appeal from its refusal to compel arbitration. Courts generally consider four factors when determining whether to grant a stay pending the appeal of a civil order:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (internal quotation marks omitted); *see, e.g., Newton v. American Debt Servs., Inc.*, No. C-11-3228 EMC, 2012 WL 3155719, at *1-2 (N.D. Cal. Aug. 2, 2012); *Ferguson v. Corinthian Colleges*, Nos. SACV 11-0127 DOC (AJWx), SACV 11-0259 DOC (AJWx), 2012 WL 27622, at *2 (C.D. Cal. Jan. 5, 2012) (not reported in F. Supp. 2d). The Ninth Circuit has held that first factor of the *Nken* test does not require a demonstration that success on appeal is more likely than not; rather, the moving party need only show that his or her appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011); *see also Britton*, 916 F.2d at 1412 (if a motion to compel arbitration "presents a substantial question," a district court may issue a stay pending appeal). If the moving party makes such a showing, the court must balance the respective hardships of the parties. *Newton*, 2012 WL 3155719, at *2. The decision to stay proceedings is a "proper subject for the exercise of discretion by the trial court." *Britton*, 916 F.2d at 1412.[1]

---

[1] Defendant essentially argues for an "automatic stay" rule that would apply upon appeal of the denial of a motion to compel arbitration. Defendant argues that without an automatic stay, parties will lose the benefits and efficiencies of arbitration if forced to litigate while an appeal is pending. (Def.'s Mot. 3-4.) However, in the Ninth Circuit, it is clear that the decision of whether to stay proceedings is

2

**B.     Analysis**

    **1.     Serious Legal Questions**

In its order denying the motion to compel arbitration, the court found that Defendants failed to demonstrate that a valid arbitration agreement existed with respect to any of the plaintiffs. Defendant did not present any purported arbitration agreement signed by Plaintiff Troyreac Henry, and in the present motion, Defendant does not argue that a serious legal question exists as to whether Ms. Henry agreed to arbitrate employment disputes. Instead, Defendant argues that a "substantial question of law" exists as to the court's conclusion that Plaintiffs Nicola Covillo and John Chisholm had not agreed to binding arbitration.

In their motion to compel arbitration, Defendants presented two employee handbooks, dated April 2005 and March 2008, both of which contained references to arbitration. Defendants also pointed to forms signed by Covillo and Chisholm acknowledging receipt of the handbooks. Finally, Defendants presented evidence of a written agreement entitled "Arbitration/Mediation Dispute Resolution Agreement" signed by Covillo and Chisholm. The court rejected Defendants' contention that these documents established the existence of an agreement to arbitrate under California law.

In support of the court's conclusion that there was no agreement to arbitrate, the court cited a California case, *Mitri v. Arnel Management Co.*, 157 Cal. App. 4th 1164 (2007), where the California Court of Appeal affirmed the denial of an employer's motion to compel arbitration on the ground that documents signed by an employee, including a general employee handbook containing an arbitration provision and an acknowledgment of receipt of the handbook, did not constitute an arbitration agreement. In addition to providing for binding arbitration for employment disputes, the handbook also stated that employees would be provided a copy of their signed arbitration agreement, and the *Mitri* court noted the absence of any such signed arbitration agreement in the record. *Id.* at 1168. Further, the acknowledgment of receipt of the handbook referred to the handbook but did not refer to an agreement by the employee to abide by the handbook's arbitration provision. *Id.* at 1173.

---

soundly within the trial court's discretion. As noted by the Ninth Circuit, a mandatory stay rule could encourage defendants to file unmeritorious appeals in order to stall a trial. *See Britton*, 916 F.2d at 1412.

First, Defendant argues that the facts in *Mitri* are distinguishable from the facts here, because unlike the plaintiff in *Mitri*, Covillo signed a document acknowledging receipt of a handbook that referred to a separate arbitration agreement and she actually signed such an "arbitration agreement." (Def.'s Mot. 7, 8.) Accordingly, Defendant argues, "a substantial question of law exists as to the effect of the existence of and signature of a separate arbitration agreement on a *Mitri* analysis." (Def.'s Mot. 7, 8.) Defendant makes a similar argument regarding Chisholm, who signed a form acknowledging receipt of a handbook that contained an arbitration provision as well as a separate "arbitration agreement." (Def.'s Mot. 8.) Defendant's argument appears to be that the court failed to analyze the "Arbitration/Mediation Dispute Resolution Agreement" in conjunction with the handbook and the acknowledgment of receipt form. However, this argument ignores the fact that the court analyzed each separate signed document presented by Defendants, and found that none of the documents, taken alone or together, evidenced an agreement by Plaintiffs to arbitrate employment disputes. Further, *Mitri* did not hold that the existence of a separate, signed "arbitration agreement," along with an employee handbook containing an arbitration provision and a document acknowledging receipt of the same, automatically results in a valid agreement to arbitrate. Whether such an agreement actually exists depends on the language of the documents at issue themselves. Here, the document titled "Arbitration/Mediation Dispute Resolution Agreement" simply notified employees of Defendants' intent to seek either arbitration or mediation to resolve employment disputes. The court found this document was insufficient to evidence Plaintiffs' agreement to be bound by arbitration for two reasons: first, the document referred to *Defendants' intent* with respect to resolving disputes; it said nothing about the signing employee's agreement to be bound. Second, it referred to Defendants' intent to seek either arbitration *or* mediation, suggesting Defendants were not proposing a binding process. (Order 8.) Whether taken alone or in conjunction with the handbook and acknowledgment of receipt forms, the document does not constitute a valid agreement to arbitrate. Accordingly, the court finds Defendant has not identified a serious legal question with respect to this argument.

Defendant also argues that a substantial question exists as to whether the handbook and acknowledgment form alone amount to an agreement to arbitrate. (Def.'s Mot. 8.) In support of this

4

position, Defendant argues that the court erred in citing *Mitri* for the proposition that a handbook acknowledgment form must refer to an agreement by the employee to abide by the handbook's arbitration provision. (Def.'s Mot. 8) Defendant argues that *Mitri* does not require such a reference, and asserts that unlike the forms at issue in *Mitri*, the acknowledgment forms here provide that the signing employee "understand[s] that it is [the employee's] responsibility to read and comply with the policies contained in this handbook." (Def.'s Mot. 9.) Assuming for the purposes of argument that Defendant's analysis of *Mitri* is correct, this argument ignores the fact that the court found other, independent reasons why the handbooks and acknowledgment forms, taken together, did not establish an agreement to arbitrate. For example, the handbook in effect during Covillo's employment only stated that Specialty's "reserves the right to have the claim handled through an arbitration/mediation dispute resolution agency," which does not evidence any intent to be bound by arbitration. (Order 7.) In addition, the acknowledgment form signed by Chisholm stated that "any disputes will be resolved through Specialty's alternative dispute resolution process," but did not refer specifically to binding arbitration. The court found that to the extent that Defendants contended that the signed acknowledgment form incorporated the terms of the handbook (which did contain an arbitration provision) to form an agreement to arbitrate, Defendants needed to show that the acknowledgment form "clearly and unequivocally" referred to the arbitration provision in the handbook. The court found Defendants failed to do so. (Order 7.) The court concludes that Defendant has not identified a serious legal question with respect to this argument.

### 2. Balancing of Interests

Even though the court finds that Defendant has not identified any serious legal questions raised by its appeal which would justify the issuance of a stay, the court nonetheless will address the remaining *Nken* factors as they provide further support to the court's determination that a stay is not warranted. Central to the inquiry of whether a stay would injure Defendants or Plaintiffs is the question of waiver. In connection with their opposition to Defendants' motion to compel arbitration, Plaintiffs argued that Defendants had waived their right to arbitrate by exploiting the litigation process for over a year prior to moving to compel. In light of the court's conclusion that there was no agreement to arbitrate, the court found it unnecessary to reach the waiver argument in ruling on

the motion to compel arbitration. (Order 3.) However, in light of the present motion to stay the litigation, it is appropriate to address the question of waiver at this time, as it bears upon the question of whether the issuance of a stay -- or lack of a stay -- would injure Plaintiffs or Defendants, respectively, under the *Nken* test.

In determining waiver, the court may consider the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th 1187, 1198 (2003)).

Here, Defendants filed an answer to the originating complaint on April 6, 2011, and waited until June 19, 2012 to file the motion to compel arbitration. This fourteen month delay is inconsistent with Defendants' known right to seek arbitration. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 210 (3d Cir. 2010) (finding waiver where motion to compel arbitration after litigating for fifteen months was untimely); *Lyzwa v. Chu*, No. C-97-20053, 1998 WL 326768, at *3-4 (N.D. Cal. Feb. 2, 1998) (not reported in F. Supp.) (finding waiver of right to compel arbitration after more than a year after suit was filed). Defendants engaged in discovery, even after asserting an affirmative defense of arbitration in their January 5, 2012 answer to the first amended complaint.[2] [Docket No. 69 (Defs.' Reply to Opp'n to Mot. to Compel Arbitration) 9.] Although Defendants contend that "all discovery in this case, other than the initial depositions on claims no longer alleged, has been initiated by Plaintiffs," Defendants waited another six months to move to compel arbitration after raising the arbitration defense in the pleadings. (Defs.' Reply to Opp'n to Compel Arbitration 9-10.) While Defendants raised the need to determine arbitrability as an objection to Plaintiffs' discovery requests, the date of those responses is unclear. [Docket No. 69-2 (Wang Decl. in Supp. of Mot. to

---

[2] Defendants' answer to the originating complaint did not raise an arbitration defense.

6

Compel Arbitration) Ex. A.] Further, the parties have engaged in motion practice, the court has issued a ruling on Defendants' motion to dismiss [Docket No. 36], and the parties have engaged in private mediation on two separate occasions. [Docket No. 61 (A. Harris Decl. in Supp. of Opp'n to Mot. to Compel Arbitration) ¶¶ 21, 22.] These actions have taken advantage of judicial procedures that are not available in arbitration.

Further, Plaintiffs would be severely prejudiced by being forced into arbitration at this juncture, having engaged in the time and expense of motion practice, discovery, and mediation before two different mediators. As of the date Plaintiffs filed their opposition to Defendants' motion to compel arbitration, Plaintiffs' counsel estimated that they had spent a combined 640 hours working on this case and that they had incurred at least $17,000 in expenses. (A. Harris Decl. in Supp. of Opp'n to Mot. to Compel Arbitration ¶ 27; Docket No. 61-10 (Rush Decl. in Supp. of Opp'n to Mot. to Compel Arbitration) ¶¶ 3, 4; Docket No. 61-11 (D. Harris Decl. in Supp. of Opp'n to Mot. to Compel Arbitration) ¶ 3.)

At the hearing on Defendants' motion to compel arbitration, the court specifically inquired as to whether anything had prevented Defendants from filing their motion sooner than fourteen months into the litigation. Defendants' counsel could identify no reason other than a difficulty locating documents which were solely in Defendants' custody and control. (Hr'g Tr. 6:21-8:15.) At the hearing on the present motion, Defendants argued that the case initially centered on Plaintiffs' "donning and doffing" allegations, and that it wasn't until later in the case that Plaintiffs abandoned their donning/doffing claims and the nature of the case changed. Defendants argued that they did not move to compel arbitration sooner because they believed that they could resolve the donning/doffing claims without incurring the expense of an arbitration. However, as Plaintiffs noted, their original complaint included the same key meal and rest break claims that are presently at issue. (*See* Compl. ¶ 24.) Further, Defendants' decision not to move to compel arbitration earlier in the case was a strategic business decision; nothing prevented them from advocating immediately that the matter should be arbitrated. Under such circumstances, it would be manifestly unfair to Plaintiffs to allow Defendants to derail the litigation after availing themselves of judicial procedures

for well over a year.³ In light of the above factors, the court concludes that Defendants have waived any right they may have had to arbitrate Plaintiffs' claims. Accordingly, Defendants would not be injured by the denial of a stay of this litigation, because even if there had been an agreement by Plaintiffs to arbitrate their disputes, Defendants waived their right to arbitration.

With respect to the public interest, Defendant argues that a stay favors the public interest given the strong public policy favoring arbitration under the Federal Arbitration Act. While mindful of the strong federal policy favoring arbitration, the existence of a federal policy does not necessarily mean that a stay is always in the public interest, particularly given California's own public policy interests in enforcing worker protections. As one court noted,

> Just because a strong federal policy exists favoring arbitration does not mean that all claims must be compelled to arbitration. Each claim must be analyzed on an individual basis. Allowing the blanket federal policy to force a stay pending appeal whenever arbitrability is at issue would force the four-factor [*Nken*] test to collapse into a single factor that would always favor staying proceedings pending appeal in the hope they would be sent to arbitration.

*Ferguson*, 2012 WL 27622, at *5. Defendant's argument that the public interest always favors arbitration, thus justifying a stay, essentially rests on the validity of their own appeal. However, as directed by the Ninth Circuit, the court has carefully evaluated each of the *Nken* factors and determined that they do not favor a stay. Further, as Defendant points out, the policy favoring arbitration exists to "save the parties time, money, and effort by substituting for the litigation process the advantages of speed, simplicity, and economy associated with arbitration." (Def.'s Mot. 11.) As described above, it was Defendants' own delay in seeking arbitration that defeated the policy interests of speed, simplicity, and economy and has caused the significant investment of time, money, and effort in this case to date.

Accordingly, balancing the interests of Plaintiffs, Defendants, and the public, the court finds that a stay of the litigation is inappropriate.

### III. CONCLUSION

---

³ The court notes that a stay of the proceedings would compound the injury to Plaintiff Henry, for whom Defendants have never presented a signed purported arbitration agreement, as she would be unable to move forward with her case against Defendants.

For the foregoing reasons, Defendant Specialty's Cafe and Bakery, Inc.'s motion to stay is DENIED.

IT IS SO ORDERED.

Dated: October 17, 2012

_____
DONNA M. RYU
United States Magistrate Judge

*IT IS SO ORDERED*
*Judge Donna M. Ryu*