UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLA COVILLO, *et al.*, | No. C-11-00594 DMR |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| SPECIALTYS CAFÉ, *et al.*, | |
| Defendants. | |

Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm move for preliminary approval of a class action settlement. [Docket No. 164.] Defendants Specialty's Café and Bakery, Inc. and Craig Saxton do not oppose the motion. [Docket Nos. 168, 181.] The court conducted a hearing on this matter on July 25, 2013 and ordered Plaintiffs to submit supplemental information in support of the motion. Plaintiffs filed the requested information on September 11, 2013. [Docket Nos. 178, 179.] For the following reasons, the court GRANTS Plaintiffs' motion.

### I. Background

#### A. Litigation History

This is a wage and hour hybrid state law class action under Federal Rule of Civil Procedure 23 and federal law collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), brought on behalf of individuals who were employed as hourly workers by Defendants Specialty's Café and Bakery, Inc. ("Specialty's") and Craig Saxton, a founder and owner of

Specialty's. Defendants operate approximately thirty quick service bakery-restaurants throughout California.[1] (2d Am. Compl. ¶¶ 5, 6.) Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm worked for Specialty's as hourly employees in the positions of team lead, customer service associate, and delivery driver from July 2006 through July 2011. (2d Am. Compl. ¶¶ 4, 8-10.) Plaintiffs filed the instant putative class action on February 9, 2011, alleging violations of various provisions of the California Labor Code and California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq.*, and a claim for unlawful failure to pay wages in violation of the FLSA. (*See* Compl.)

In Plaintiffs' Second Amended Complaint, which is the operative complaint, Plaintiffs allege the following claims: 1) failure to pay minimum wage and overtime in violation of Labor Code[2] sections 510 and 1194; 2) failure to pay wages upon termination in violation of Labor Code section 203; 3) failure to provide accurate pay stubs in violation of Labor Code section 226; 4) failure to maintain accurate payroll time records in violation of Labor Code section 1174 and Wage Order 5; 5) failure to provide rest periods in violation of Labor Code section 226.7 and Wage Order 5; 6) failure to provide meal periods in violation of Labor Code sections 226.7 and 512 and Wage Order 5; 7) improper deductions from wages in violation of Labor Code section 221; 8) conversion; 9) failure to reimburse business expenses in violation of Labor Code sections 2802 and 2804; 10) failure to pay minimum wage and/or overtime compensation in violation of the FLSA, 29 U.S.C. § 216(b); 11) unfair business practices in violation of the UCL; and 12) a claim for civil penalties pursuant to the Private Attorneys General Act, Labor Code section 2699.3(a)(2)(C). (2d Am. Compl.)

On March 22, 2013, the parties agreed to settle this matter following three private mediation sessions and executed a settlement agreement on March 25, 2013. (Harris Decl., Sept. 10, 2013, ¶¶ 7, 48-50.) Plaintiffs filed an unopposed motion for preliminary approval of the settlement agreement

---

[1] Specialty's also operates stores in Illinois and Washington. (2d Am. Compl. ¶ 5.) Current and former employees whom Specialty's employed in those states are not part of the putative class. (2d Am. Compl. ¶ 56.)

[2] All references herein to the "Labor Code" are to the California Labor Code.

2

on June 20, 2013. [Docket No. 164.] The court held a hearing on the motion on July 25, 2013 and deferred ruling on the motion pending Plaintiffs' submission of supplemental information in support of the motion. On September 10 and 11, 2013, Plaintiffs filed the requested information, as well as an amendment to the parties' settlement agreement. [Docket Nos. 178, 179 (Suppl. Memo.).]

### B. The Settlement Agreement

The complete terms of the proposed settlement agreement are set forth in the Settlement Agreement and General Release ("Agreement") and the Amendment to the Agreement ("Amendment"). (Harris Decl. Exs. 1, 2.) The Agreement provides for a principal settlement class "comprised of all non-exempt employees who were employed by Specialty's within California from four years prior to the filing of the February 9, 2011 Complaint to the date of entry of preliminary approval of the Settlement Agreement." (Agreement ¶ 3.) It also provides for five subclasses, described in further detail *infra*, as follows: Bread Pull subclass, Tip Pool subclass, Delivery subclass, Overtime subclass, and Meal and Rest Break subclass. (Amendment § 3.) Defendants estimate there are approximately 3,474 individuals in the class. (Harris Decl. ¶ 7.)

#### 1. Settlement Amount

Under the terms of the settlement, Specialty's will pay a Gross Settlement Amount of $2,000,000 as a fixed common-fund settlement with no reversion. The Gross Settlement Amount will be distributed among participating class members, Plaintiffs, the settlement administrator, and class counsel. A portion of the amount will also be used to pay payroll taxes. (Agreement § 7; Amendment § 7(D).) Payments will be made to the class members, Plaintiffs, and class counsel in two distributions. The first distribution will take place after the first installment payment of $1,000,000 by Specialty's on November 15, 2013, and the second distribution will occur after the second installment payment of $970,000 by Specialty's on November 15, 2014.[3] (Amendment §§ 7(D), 17(B).) Payments to the Bread Pull, Tip Pool, Delivery, and Overtime subclass will be completed in the first distribution. Payments to the Meal and Rest Break subclass will be made in

---

[3] Specialty's will deposit an initial $30,000 into an escrow account maintained by the settlement administrator within five business days of entry of preliminary approval of the settlement. (Agreement § 17(A).)

1  each distribution, as will enhancement payments to the Plaintiffs and court-awarded attorneys' fees.
2  (Amendment § 7(D).) Based on the class size of 3,474 individuals, the gross recovery is
3  approximately $575 per class member. (Harris Decl. ¶ 7.)
4        Unclaimed funds and any other residual from the Gross Settlement Amount, as well as
5  interest in the amount of 1% on the second installment payment of $970,000 accruing as of
6  November 16, 2013, will be paid into the Residual Net Settlement Fund, the balance of which will
7  be distributed to the California Labor and Workforce Development Agency as the cy pres recipient.
8  (Agreement §§ 12(E), 17(B).)

        **a.    Bread Pull Subclass Allocation**

10       The proposed Bread Pull subclass addresses Plaintiffs' contention that Specialty's failed to
11 pay at least two hours of "reporting time pay" to workers who reported to work on weekends to
12 prepare for Monday morning baking. *See* Cal. Code Regs. tit. 8 § 11050(5) (2013). Members of
13 this subclass may receive up to two hours of pay if they worked a weekend without pay and
14 approximately one additional hour of pay if they were only paid for an hour of weekend work.
15 (Harris Decl. ¶ 9.) There were fewer than 4,000 incidents of short weekend reporting time pay
16 during the class period, and Plaintiffs computed the total possible damages for unpaid "Bread Pull"
17 wages to be approximately $55,000. The parties have allocated a total of $40,000 from the Gross
18 Settlement Amount to pay the claims of members of this subclass. (Harris Decl. ¶ 10.) Specialty's
19 will provide the settlement administrator with a list of employees who worked on weekends, along
20 with their hourly rates of pay and information regarding the number of hours for which they were
21 paid, and the settlement administrator will calculate the payment due to each subclass claimant.
22 (Harris Decl. ¶ 11.) The number of unpaid reporting time hours and each subclass member's
23 approximate Bread Pull subclass payment, based on their hourly wage, will be printed on the
24 individual's claim form. (Harris Decl. ¶ 11.) If class members submit claims that exceed the funds
25 allocated to this subclass, the settlement administrator will impose a cap and make a pro rata
26 distribution to subclass claimants based upon the amount of unpaid reporting time owed. If less than
27 the $40,000 allocation is claimed, any remaining amounts will revert to the Meal and Rest Break
28 subclass. (Harris Decl. ¶ 11.)

### b. Tip Pool Subclass Allocation

The proposed Tip Pool subclass addresses Plaintiffs' contention that Specialty's failed to properly allocate employee tips by improperly including "Team Lead" managers in tip pools from February 2007 through September 2008. (Harris Decl. ¶ 12.) Based upon Specialty's's records, Plaintiffs have determined that 48 Team Leads improperly shared in their stores' tip pools from February 2007 through September 2008, and were improperly paid an average of $24.76 per week in tips. Plaintiffs estimate the total possible damages for improper allocation of tips is $50,000 and estimate that members of this subclass are entitled to approximately $.10 for each hour they worked during the applicable period. (Harris Decl. ¶¶ 13, 14.) There are approximately 600 individuals in this subclass, and the parties have allocated a total of $35,000 of the Gross Settlement Amount to pay claims for this subclass. (Harris Decl. ¶¶ 14, 15.) Specialty's will provide the settlement administrator with the total number of hours worked by each of the subclass members and the settlement administrator will calculate the payment due to each subclass claimant, based upon $.10 per hour worked. The number of hours worked and each subclass member's approximate Tip Pool subclass payment will be printed on the individual's claim form. (Harris Decl. ¶ 16.) If class members submit claims that exceed the funds allocated to this subclass, the settlement administrator will make impose a cap and make a pro rata distribution to class members based upon the number of hours they worked. If less than the $35,000 allocation is claimed, any remaining amounts will revert to the Meal and Rest Break subclass. (Harris Decl. ¶ 16.)

### c. Delivery Subclass Allocation

The proposed Delivery subclass addresses Plaintiffs' contention that Specialty's did not consistently reimburse delivery drivers for out-of-pocket business-related expenses associated with delivering Specialty's food orders, including mileage reimbursement for employee-owned vehicles, parking, and other miscellaneous expenses. (Harris Decl. ¶ 26.) Plaintiffs estimate that there are approximately 150 drivers with potential claims for unreimbursed expenses and estimate the total possible damages for this subclass at approximately $130,000. The parties have allocated a total of $70,000 to pay claims for the Delivery subclass. (Harris Decl. ¶¶ 27-29.) Members of this subclass must request reimbursement for any unpaid business expenses and submit documentation supporting

their claims. Specialty's will provide the settlement administrator with documentation of all expense reimbursements previously paid to drivers and the settlement administrator will be responsible for reviewing claims and making determinations about the amounts paid to subclass claimants. (Harris Decl. ¶ 29.) If class members submit claims that exceed the funds allocated to this subclass, the settlement administrator will make impose a cap and make a pro rata distribution to class members based upon the class member's expense reimbursement award. If less than the $70,000 allocation is claimed, any remaining amounts will revert to the Meal and Rest Break subclass. (Harris Decl. ¶ 29.)

### d. Overtime Subclass Allocation

The proposed Overtime subclass addresses Plaintiffs' contention that from February 9, 2007 through March 24, 2013, Specialty's improperly computed overtime pay by omitting certain payments from the regular rate of pay, thus using an artificially low regular rate. (Harris Decl. ¶¶ 17-21.) Specialty's's employees who work in stores that collect delivery fees are entitled to share in the distribution of the fees according to a payout schedule. Delivery drivers are entitled to share 75% of the delivery fees and the remainder is shared by the remaining employees in the store who are entitled to receive tips. (Harris Decl. ¶ 17.) Plaintiffs estimate that drivers were underpaid by approximately $20 for each overtime hour that they worked, and non-driver employees were underpaid by approximately $1.50 per overtime hour. (Harris Decl. ¶¶ 21, 22.) Plaintiffs estimate the total potential damages for all members of the subclass is approximately $140,000 ($45,000 for 68 drivers and $95,000 for 765 non-driver employees), and have allocated $80,000 to pay claims for the Overtime subclass. (Harris Decl. ¶¶ 21-24.) Specialty's will provide the settlement administrator with a list of the employees who earned overtime in stores that received at least $1,000 in delivery fees during the applicable time period. The settlement administrator will determine the total overtime hours worked and each subclass claimant's overtime payment, with drivers entitled to approximately $20 per overtime hour worked and non-drivers entitled to approximately $1.50 per overtime hour worked. (Harris Decl. ¶¶ 21, 22, 25.) The number of total overtime hours worked and each subclass member's approximate Overtime subclass payment will be printed on the individual's claim form. (Harris Decl. ¶ 25.) If class members submit claims that exceed the funds

allocated to this subclass, the settlement administrator will make impose a cap and make a pro rata distribution to class members based upon the amount of overtime owed. If less than the $80,000 allocation is claimed, any remaining amounts will revert to the Meal and Rest Break subclass. (Harris Decl. ¶ 25.)

### e. Meal and Rest Break Subclass Allocation

Finally, Plaintiffs allege that Specialty's operated their California stores with too few employees and thus pressured hourly workers to work through their statutorily-required meal and rest breaks. (2d Am. Compl. ¶¶ 17-18.) The proposed Meal and Rest Break subclass addresses these contentions, and consists of all non-exempt employees who were employed by Specialty's in California from February 9, 2007 to the date of entry of preliminary approval of the Settlement Agreement, who worked more than one full workweek. (Harris Decl. ¶ 31.) There are approximately 3,474 individuals in this subclass. After distribution of the Gross Settlement Amount to pay administrative costs, payments to individuals in the other four subclasses, attorneys' fees and costs, class representative incentive awards, and payroll taxes, Plaintiffs estimate that there will remain at least $914,000 for distribution to the Meal and Rest Break subclass. Based on the number of days worked and average hourly wage during the time period at issue, Plaintiffs estimate the maximum possible value of the meal and rest break claim is $14,709,002. (Harris Decl. ¶ 34.) With respect to meal periods, workers' punch data confirms whether they actually received proper meal breaks. Plaintiffs reviewed the punch data, and estimate the total provable meal period damages is less than 50% of the maximum total, and estimate a similar result for provable rest break damages. (Harris Decl. ¶¶ 35-37.) Based on a total of 173,000 workweeks worked by the class members, each subclass member will receive approximately $5.28 per week for missed and/or late meal and rest breaks. (Harris Decl. ¶¶ 31, 32.) Specialty's will provide the settlement administrator with a list of subclass members, and the settlement administrator will multiply the number of workweeks by the settlement amount per week. The number of workweeks and each subclass members' corresponding Meal and Rest Break subclass payment will be printed on each individual's claim form. (Harris Decl. ¶ 33.)

The parties propose making payments from the Gross Settlement Amount to the Meal and Rest Break subclass members in two distributions: they propose distributing $329,000 to this subclass on or about January 1, 2014, and the balance, approximately $585,000 to the subclass on or about November 15, 2014. (Amendment § 7(D); Harris Decl. ¶ 55.)

### 2. Injunctive Relief

The settlement agreement also provides for injunctive relief. No later than 180 days following final approval of the settlement, Specialty's will 1) provide refresher training to Store General Managers to clarify that all breaks are permitted and authorized, and that employees receive compensation for all hours worked; 2) confirm that it is routinely maintaining precise records of the actual hours worked by its employees; and 3) utilize the correct regular rate when computing overtime for its employees going forward. (Agreement ¶ 8.) Specialty's will bear the costs for the injunctive relief and such costs will not reduce the Gross Settlement Amount. (Harris Decl. ¶¶ 56, 60.)

### 3. Class Notice and Claims Procedure

Under the Agreement and Amendment, Specialty's will provide the settlement administrator with a list of the last-known names, addresses, and social security numbers of the class members within fifteen days of preliminary approval of the settlement. (Agreement § 11.) The settlement administrator will deliver the Class Notice and Claim Form to class members via first-class mail within ten days after receiving this information. In addition, the settlement administrator will design and maintain a settlement website which will contain the full terms of the settlement and all relevant pleadings in this matter. (Sherwood Decl. Ex. 3; Harris Decl. Ex. 3 (Class Notice).) Class members will have sixty days from the date of mailing to submit completed Claim Forms and requests for exclusion. (Amendment § 12(A).) The settlement administrator will perform one address follow-up on returned mail and will re-mail the Class Notice to any updated address within fifteen days of receipt of the returned mail, and the sixty day time limit to submit a Claim Form or request for exclusion shall run from the date of the second mailing. (Amendment § 12(A).) Any objections to the settlement must be served and filed by no later than sixteen court days before the final approval hearing. (Class Notice.)

### 4. Settlement Administration Costs

Plaintiffs propose that Gilardi & Co., LLC ("Gilardi") be appointed as settlement administrator. Gilardi estimates the total cost of administering the settlement will fall between $35,113 and $48,741, assuming class participation rates from 25% to 75%. (Sherwood Decl., Sept. 10, 2013, ¶ 30.) Plaintiffs estimated settlement administration costs of $45,000 to calculate the minimum weekly Meal and Rest Break subclass payment. (Harris Decl. ¶ 58.) Settlement administration costs will be paid from the Gross Settlement Amount. (Agreement § 7(B).)

### 5. Class Representative Incentive Awards

In addition to the relief afforded all class members, the Agreement authorizes class representatives Covillo, Henry, and Chisholm to seek enhancement awards of up to $8,000, paid from the Gross Settlement Amount. (Agreement § 7(C).)

### 6. Attorneys' Fees and Costs

The Agreement authorizes class counsel to apply to the court for an award of attorneys' fees not to exceed 33% of the Gross Settlement Amount, or $666,000, as well as reimbursement of costs up to $50,000. (Agreement § 7(A).) Plaintiffs' briefing contains an error regarding the issue of costs. The Agreement provides that "Defendants will not object to Class Counsel's request for reimbursement of costs and expenses in an amount not to exceed $50,000 to be paid from the Gross Settlement Payment." (Agreement § 7(A).) However, in their supplemental papers, Plaintiffs indicate that it will seek reimbursement of costs "not to exceed $55,000," and used the higher number in calculating the minimum weekly Meal and Rest Break subclass payment. (Suppl. Memo. 1-2, 19.) Plaintiffs do not explain this discrepancy. The parties are directed to amend the notice and claims materials to reflect the $50,000 referenced in the Agreement.

### 7. Released Claims

The Agreement provides that class members will release all state and federal wage and hour claims that relate to or arise from the facts alleged in the Second Amended Complaint up to and including the date of preliminary approval. (Agreement § 14.) The release applies to each class member who does not timely submit a request for exclusion. However, class members who do not submit claim forms will not release the FLSA claim. (Suppl. Memo 23; Class Notice.)

9

## II. Discussion

### A. Conditional Class Certification

Plaintiffs seek conditional certification of a settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). A court may only certify a class action if it satisfies the four prerequisites identified in Rule 23(a) *and* fits within one of the three subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where there are common questions of law or fact which predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). In the settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *See Staton,* 327 F.3d at 952-53 (quoting *Amchem*, 521 U.S. at 620); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

Here, the requirements under Rule 23(a) are satisfied. First, there are approximately 3,474 class members, all identifiable from Specialty's's records. This is sufficient to satisfy Rule 23's numerosity and ascertainability requirements. *See Hanlon*, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" (quoting Rule 23(a)(1)); *see also O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the

commencement of the action." (internal quotations omitted)). With respect to commonality, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012). Here, the issues facing the class arise from common questions involving Specialty's's policies regarding the calculation and payment of wages, distribution of tips, reimbursement for delivery expenses, and provision of timely and compliant meal and rest periods to its workers. This is sufficient to satisfy the commonality requirement. *See Dilts v. Penske Logistics*, LLC, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding commonality requirement satisfied where Plaintiffs identified "common factual questions, such as whether Defendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement . . . , and common legal questions, such as Defendants' obligations under [sections of the] California Labor Code").

Plaintiffs have also satisfied Rule 23(a)(3)'s typicality requirement. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation marks omitted) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005). Here, the named Plaintiffs' personal claims are similar to those of the absent class members; namely, they were not properly paid all of their earned wages, were not properly reimbursed for delivery expenses, and were not provided with all of their meal and rest periods. Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation

before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citation omitted); *see also Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect class interests). Here, there is no indication that there is any conflict between the class and Plaintiffs and/or their counsel. In addition, the court is satisfied that Plaintiffs and their counsel have and will continue to pursue this action vigorously on behalf of Plaintiffs and the proposed class members.

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon,* 150 F.3d at 1022. The court finds that certification is appropriate under Rule 23(b)(3). Questions of law and fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The case involves multiple claims for relatively small sums, and a class action is superior to an alternative method for fairly and efficiently adjudicating the claims. *See Amchem,* 521 U.S. at 625; *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (class action appropriate because "if plaintiffs cannot proceed as a class, some- perhaps most- will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

In sum, the record is sufficient to support conditional certification of the class under Rules 23(a) and 23(b)(3).

## B. Preliminary Fairness Determination

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon*, 150 F.3d at 1026; *see also* Fed. R. Civ. P. 23(e) (court may only approve class action settlement based on finding that settlement is "fair, reasonable, and adequate."). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting

their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the court must balance a number of factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; and the experience and views of counsel. *Staton*, 327 F.3d at 959. In making this evaluation, the court is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id*. Further, as some of these factors cannot be fully assessed until the court conducts its final fairness hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quotation marks and citation omitted). Preliminary approval of a settlement and notice to the class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (2d ed. 1985)).

Here, the factors set forth in *In Re Tableware Antitrust Litigation* weigh in favor of preliminarily approving the settlement. First, the parties participated in private mediation, which "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). Second, there are no obvious deficiencies. The settlement confers tangible monetary benefits to the class; namely, a Gross Settlement Amount of $2,000,000, with no reversion, that will

be distributed to the nearly 3,500 class members. This amount represents a compromise of the parties based on the perceived strengths and weaknesses of their respective positions. There is no indication that the settlement improperly grants preferential treatment to class representatives or segments of the class. The parties arrived at the settlement after more than two years of litigation and after substantial discovery was completed, and the parties clearly contemplated the risk, expense, and delay posed by continued litigation. The court finds that the settlement appears to fall within the range of possible approval.

Notwithstanding the foregoing, the court has some concern regarding Plaintiffs' anticipated request for incentive payments of up to $8,000, which exceeds the amount which is presumptively reasonable in this District. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable."). The Ninth Circuit has noted that plaintiffs who receive large incentive awards in addition to their share of the recovery "may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard," and become "more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." *Staton*, 327 F.3d at 975, 977 (quotation marks and citation omitted). The court also notes its concern regarding Plaintiffs' anticipated request for attorneys' fees based on one-third of the Gross Settlement Amount in light of the fact that the benchmark for such an award is 25%. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Despite these concerns, the court need not resolve these matters at the preliminary approval stage, since both requests will be finally determined at the fairness hearing.

### C. Class Notice

The court next considers the sufficiency of the parties' notice plan. Where a proposed settlement has been reached by the parties, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The court must ensure that the parties' notice plan provides for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable

effort" and that the notice itself explains in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and the binding nature of the class judgment. Fed. R. Civ. P. 23(c)(2)(B).

Here, Plaintiffs appropriately propose mailing the Class Notice and claim form to class members by first-class mail within ten days after receiving class members' information from Specialty's. In addition, the settlement administrator will design and maintain a settlement website which will contain the full terms of the settlement and all relevant pleadings in this matter. (Sherwood Decl. Ex. 3; Class Notice.) The court finds that the Class Notice adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiffs' counsel and the settlement administrator in clear, understandable language.

### III. Conclusion

For the reasons stated above, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement is GRANTED as follows:

1. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the court conditionally certifies, for settlement purposes only, a proposed settlement class comprised of all non-exempt employees who were employed by Specialty's within the State of California during the period from February 9, 2007 to October 25, 2013.

2. The Agreement and Amendment thereto are preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

3. Plaintiffs Nicola Covillo, Troyreac Henry, and John Chisholm are appointed as class representatives.

4. Alan Harris and Priya Mohan of Harris & Ruble, David S. Harris of the North Bay Law Group, and James D. Rush of the Law Offices of James D. Rush are appointed as Class Counsel.

5. Gilardi & Co., LLC is approved as the settlement administrator.

6. The court directs mailing of the Class Notice and claim form in accordance with the schedule set forth in the Amendment to the Settlement Agreement.

7. Class Counsel and Plaintiffs shall file a motion for attorneys' fees, costs, and enhancement awards on or before the date the settlement administrator mails the Class Notice and claim forms to class members. Plaintiffs shall file a motion for final approval of the settlement by no later than 35 days before the final approval hearing.

8. A hearing on the final approval of the settlement will be heard on **February 27, 2014 at 11:00 a.m.**

9. Any member of the settlement class who desires exclusion therefrom must mail, by the date set forth in the class notice, the opt-out form to the address set forth in the class notice. All persons who properly submit a completed opt-out form shall not be settlement class members and shall have no rights with respect to the settlement.

10. Any member of the settlement class who does not request exclusion, and who files a timely objection to approval of the proposed settlement in compliance with the requirements of Settlement Agreement and Amendment thereto, may appear at the final approval hearing in person or through counsel to show cause why the proposed settlement should not be approved as fair, reasonable, and adequate.

IT IS SO ORDERED.

Dated: October 25, 2013



DONNA M. RYU
United States Magistrate Judge